463 A.2d 1155

**Ida M. FULKROAD and Carl F. Bonawitz, Administrators of the Estate of Warren D. Bonawitz, Deceased, Appellants,**

**v.**

**Frances A. Runkle OFAK.**

Superior Court of Pennsylvania.

Argued March 8, 1983.

Filed July 29, 1983.

Gregory M. Kerwin, Harrisburg, for appellants.

Don A. Leatherman, Harrisburg, for appellee.

Before CERCONE, President Judge, and WICKERSHAM and MONTEMURO, JJ.

MONTEMURO, Judge:

The sole question for our review on this appeal is whether an adjudicated incompetent may execute a valid beneficiary designation for group life insurance benefits. Appellants, Ida M. Fulkroad and Carl F. Bonawitz, administrators of the estate of Warren D. Bonawitz, deceased, contend that the lower court erred in failing to void the designation under 20 Pa.C.S.A. § 5524, notwithstanding the court's *de facto* determination that the deceased was competent at the time he named the beneficiary.

The deceased, Warren D. Bonawitz, was adjudicated incompetent[1] on August 11, 1954. He was placed in the Harrisburg State Hospital where he remained until his discharge on January 24, 1970. During his sixteen year stay in the hospital, the deceased was befriended by the appellee, Mrs. Ofak, who was employed as a nurse's aide at the time. On July 6, 1970, the deceased was employed by the Brubaker Tool Corporation in Millersburg, Pennsylvania. On August 20, 1970, the deceased designated the appellee as the beneficiary on his group life insurance policy. The deceased worked at the Brubaker plant until his death on April 18, 1980. He was never adjudicated competent.[2]

The proceeds from the deceased's group life insurance policy were paid to the appellee in the amount of $4,000.00. The appellants filed a petition in equity in the Court of Common Pleas of Dauphin County, asking that court to void the beneficiary designation executed by the deceased on the ground that 20 Pa.C.S.A. § 5524 rendered the deceased legally incapable, as an incompetent, to make "any contract or gift or any instrument in writing." The lower court recognized that a literal application of this statute would seemingly dictate a result consistent with the appellants' argument. However, the lower court declined to construe the statute in this manner. Instead, the court believed that

1. 20 Pa.C.S.A. §§ 5501 and 5511.

2. 20 Pa.C.S.A. § 5517.

"the designation of a revocable beneficiary on a life insurance policy should be judged by the same principles as the writing of a will" (lower court opinion at 6) and basically agreed with the appellee's argument that under *In Re Lanning's Estate*, 414 Pa. 313, 200 A.2d 392 (1964) and *In Re Mohler's Estate*, 343 Pa. 299, 22 A.2d 680 (1941), "... despite the statutory provision, an adjudication of mental incapacity prior to the execution of a will does not command the conclusion that such a will is invalid and when a testator has been adjudged incompetent, it merely shifts the burden to the proponents of a will to prove testamentary capacity." (Lower court opinion at 6.)

■ Our review on appeal from a decree entered by the Orphans' Court is extremely limited. We can modify a decree "only if the findings on which it rests are not supported by competent or adequate evidence or if there has been an error of law, an abuse of discretion, or a capricious disbelief of competent or credible evidence." *In re Estate of Hastings*, 479 Pa. 122, 130, 387 A.2d 865, 869 (1978).

■ Section 5524 provides in pertinent part:
An incompetent shall be incapable of making any contract or gift or any instrument in writing after he is adjudged incompetent and before he is adjudged to have regained his competency.

Our research indicates that this particular statute has been interpreted, consistently, *not* to mandate a conclusive determination of incapacity. Rather, it has been long held that an adjudication of incompetency merely raises a *presumption* subject to rebuttal by proponents of the "instrument" in question to show that at the time of its execution the maker was, in fact, capable. This interpretation was explicated for the first time in *Hoffman's Estate*, 209 Pa. 357, 58 A. 665 (1904) where the Pennsylvania Supreme Court, construing the predecessor to § 5524, Act of June 25, 1895, P.L. 300, § 5, stated that:

The difficulty in the case which probably misled the learned judge below was that the claims of both parties are extreme, and neither can be sustained in its entirety. The testator was decreed to be of feeble mind and incapable of managing his affairs in December, 1902, and made the codicil to his will which is the cause of contention here in April, 1903. Appellant relying on the literal wording of section 4 of the act that after the decree "the said person shall be wholly incapable of making any contract or gift whatever or any instrument in writing," contends that the codicil is *ipso facto* void as a matter of law and must be totally disregarded. The proponents of the codicil on the other hand contend that as there is no expressed intent to repeal the provisions of the Wills Act, the words "any instrument in writing" do not include a will, and the codicil is *prima facie* valid, and there being no evidence that the testator was *non compos* when he executed it, it must stand without further contest.

Neither position is altogether sound. Section 7 of the act provides that "if at any time after the decree .... the party .... shall become able to care for his property, he or any of his family may present a petition to the court setting forth such fact," and after hearing the court may so decree and discharge the guardian, etc. This is an express provision for setting aside the decree and restoring the status of contractual capacity during the lifetime of the party, but it is not exclusive of the ordinary rights and proceedings in regard to wills. The will of Edward Hoffman was made before the decree of incapacity against him. But that would not prevent a contestant from showing that he was *non compos* when he made it. And on the other hand the making of the codicil after the decree would not bar the parties from showing that he was of sound disposing mind when he made it. The contention of appellant therefore that the death of Hoffman without any revocation by the court of the decree of incapacity closed all inquiry on the subject is too broad and cannot be sustained.

On the other hand the claim of the appellees is equally untenable.... It would defeat the larger part of the intent of the act to hold as we are asked to do that a man was incapable of making a sale of a ten dollar cow even for its full value, and yet capable of disposing of his entire estate by will. Whatever the difference in capacity required between a contract and a will, the latter is an "instrument in writing" and *prima facie* within the prohibition of the statute, and if made during the existence of a decree, the presumption against its validity can only be overcome by satisfactory evidence of restoration of capacity.

*Id.*, 209 Pa. at 359–60, 58 A. 665. See also, *In Re Estate of Hastings*, 479 Pa. 122, 387 A.2d 865 (1978); *In Re Lanning's Estate*, 414 Pa. 313, 200 A.2d 392 (1964); *In Re Mohler's Estate*, 343 Pa. 299, 22 A.2d 680 (1941). Thus, it is clear that the statutory language contained in § 5524 only creates a rebuttal presumption of incapacity. And this is true whether the instrument is a contract, a gift or a will.

Appellants argue that the beneficiary designation cannot be analogized to the cases involving wills since 20 Pa.C.S.A. § 6108 specifically states that "[t]he designation of beneficiaries of life insurance ... shall not be considered testamentary and shall not be subject to any law governing the transfers of property by will." While the designation must be deemed an *inter vivos* transaction, see *Fiumara v. Fiumara*, 285 Pa.Super. 340, 349 n. 6, 427 A.2d 667, 671 n. 6 (1981), appellants' argument on this aspect misses the point of the previously-cited cases. In *Hoffman's Estate*, supra, and *In Re Lannings' Estate*, supra, our supreme court decided the *effect* of an adjudication of incompetency on an incompetent's *ability* to make a will as an "instrument in writing." Essentially, the question asked in those cases was whether an incompetency determination conclusively established incapacity. The court found that it did not. In this case, no credible argument can be made that a designation of a beneficiary on a life insurance policy, however characterized, does not fall within the purview of

the statute as an "instrument in writing" and therefore also subject to the statute's interpretation.

Moreover, the lower court correctly equated the requirements for testamentary capacity with that capacity to designate a beneficiary for life insurance benefits. This analysis of the required capacity in no way contravenes the intent of § 6108 and, needless to say, the similarities underlying both instruments are readily apparent.

■ This result, for the most part, decides the narrow question of law put before us by the appellants. The order adjudicating the deceased as incompetent on August 11, 1954 raised a rebuttable presumption that he was incapable of making a valid beneficiary designation on August 20, 1970. It was not conclusive. The appellee produced the testimony of various witnesses to rebut the presumption and, in the opinion of the lower court, did so successfully. Primarily, the lower court relied on these facts as reiterated by the court en banc:

> The testimony at the hearing disclosed that Mr. Bonawitz was discharged permanently from the Harrisburg State Hospital on January 24, 1970. Upon his discharge, he became employed at the Brubaker Tool Corporation and held his job there, with periodic promotions, until his death. The hospital physician testified he found Mr. Bonawitz to be stable emotionally and mentally. His supervisor stated he was a responsible employee over the ten year period of employment. He had his own permanent residence, his own checking account, paid his own bills and generally was capable of conducting his own affairs. Frances A. Runkle Ofak had befriended Mr. Bonawitz over a long period of time and performed many significant services for him gratuitously. Because of his distrust of his family and the virtual abandonment of him by most members of his family, Mrs. Ofak was a logical object of his bounty. There was no evidence that Mrs. Ofak exerted undue influence or overreaching.

We find that the record does indeed support the lower court's *de facto* determination that the deceased possessed

sufficient capacity to validly designate a beneficiary on his group life insurance policy.

Order affirmed.